UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Nos. 2:23-CR-00111-1-JRG-CRW |
| | ) | 2:21-CR-00027-1-JRG-CRW |
| SEAN CHRISTOPER WILLIAMS | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on defense attorney Joseph Oren McAfee's Motion to Withdraw as Attorney [Doc. 46, 2:23-CR-00027-1-JRG-CRW; Doc. 98, 2:21-CR-00027-1-JRG-CRW]¹ and Defendant Sean Christopher Williams's oral request for substitute counsel at the Court's sealed hearing on April 29, 2024. For the reasons herein, the Court will grant Mr. McAfee's motion and grant Mr. Williams's request for substitute counsel.

### I. BACKGROUND

In April 2021, a federal grand jury charged Mr. Williams in a one-count indictment with being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). [Indictment, Doc. 3, at 1]. At his initial appearance in May 2023, he requested an attorney, and United States Magistrate Judge Cynthia R. Wyrick appointed David L. Leonard, Esq., a member in good standing of the CJA panel, to represent him. [Order, Doc. 14, at 2]. Mr. Leonard moved to withdraw from his representation roughly a month later. He cited "a complete deterioration of the attorney-client relationship" that made effective and ethical representation "impossible." [Mr. Leonard's Mot. to Withdraw, Doc. 24, at 1]. After holding a sealed hearing, Judge Wyrick

---

¹ Unless the Court specifies otherwise, all subsequent citations to the record refer to documents in case number 2:21-CR-00027.

granted Mr. Leonard's motion and appointed Bryce W. McKenzie, Esq., also a member in good standing of the CJA panel, as Mr. Williams's substitute attorney. [Order, Doc. 28, at 2].

Over the course of Mr. McKenzie's representation of Mr. Williams, the grand jury went on to charge Mr. Williams in a superseding indictment with attempted escape from his place of lawful confinement, in violation of 18 U.S.C. § 751(a), [Superseding Indictment, Doc. 43, at 1–2], and in a new, separate case, it also charged him with three counts of sexual exploitation of a minor, in violation of 18 U.S.C. § 2251(a) and (e), [Indictment, Doc. 1, at 1–3, 2:23-CR-00027-1-JRG-CRW]. Judge Wyrick appointed Mr. McKenzie to represent Mr. Williams in the new case, i.e., on the charges under § 2251(a) and (e). [Order, Doc. 8, at 2, 2:23-CR-00027-1-JRG-CRW].

But Mr. McKenzie—about a month after his new appointment and about four months after his initial appointment—moved to withdraw from his representation of Mr. Williams, citing irreparable damage to the attorney-client relationship. [Mr. McKenzie's Mot. to Withdraw & Aff., Doc. 64, at 2]. Before Judge Wyrick could hold a hearing on Mr. McKenzie's motion, Mr. Williams allegedly escaped from custody while en route to the federal courthouse in Greeneville, Tennessee, by kicking out his transport vehicle's back window. [Special Agent Paul Durant's Aff., Doc. 1, at 2–3, 2:23-MJ-00020-1-CRW]. Following roughly a month-long search, law-enforcement authorities located and arrested Mr. Williams in Florida and returned him to this district, where the grand jury then charged him with escape from his place of lawful confinement, in violation of 18 U.S.C. § 751(a). [Second Superseding Indictment, Doc. 66, at 1–2].

With Mr. Williams back in custody, Judge Wyrick—now in late 2023—held a sealed hearing on Mr. McKenzie's motion to withdraw and granted his motion. [Order, Doc. 72, at 1].

She appointed Joseph Oren McAfee, Esq., a member in good standing of the CJA panel, to represent Mr. Williams, [Order, Doc. 72, at 1], but not before warning Mr. Williams that he would likely have to represent himself if he later found Mr. McAfee's representation to be unsatisfactory:

> I do want to make something clear to you. . . . You have the right to effective assistance of counsel. Mr. McKenzie was well capable of providing that. Mr. McAfee is well capable of providing that. Both are seasoned attorneys, seasoned members, of the panel here in Greeneville. You do not have the right to counsel of your choice unless you are paying for that counsel. So if you can go hire an attorney, you will throughout these proceedings always have the right to hire anyone you choose to represent you. Otherwise, this is the second attorney the Court has appointed for you, and I don't intend to appoint anyone else to represent you. What that means is, if you can't find a way to make things work with Mr. McAfee, then you will likely be representing yourself on a pro se basis from here, which is a very difficult undertaking. So, I wanted to make sure that you understood how that worked.

[Audio of Hr'g at 5:58–7:29 (on file with the Court)]. Roughly three months later, Mr. Williams filed a letter with the Court, expressing dissatisfaction with Mr. McAfee's representation, for a host of reasons, and requesting a hearing "to find a possible solution," though he also stated that "[i]dealy" [sic] he would like a different attorney. [Def.'s Letter, Doc. 87, at 6].

In response to Mr. Williams's letter, the Court conducted a sealed hearing at which—for over an hour—it fully inquired into Mr. Williams's reasons for his displeasure with Mr. McAfee. *See Martel v. Clair*, 565 U.S. 648, 664 (2012) ("[C]ourts cannot properly resolve substitution motions without probing why a defendant wants a new lawyer." (citation omitted)). After listening to Mr. Williams, the Court declined to replace Mr. McAfee with a substitute attorney and urged Mr. Williams to heed Mr. McAfee's legal advice and stop trying to manage his own defense. In addition, the Court, as Judge Wyrick had done, warned Mr. Williams that he would have to represent himself if he could not work with Mr. McAfee.

3

About three weeks later, Mr. McAfee moved to withdraw from his representation of Mr. Williams, [Mr. McAfee's Mot. to Withdraw, Doc. 98, at 1], attesting that Mr. Williams verbally discharged him, provided him with written notice of his desire to discharge him, and filed a complaint of misconduct against him with the Tennessee Board of Professional Responsibility, [Mr. McAfee's Aff., Doc. 100, at 1–2]. In response to Mr. McAfee's motion, the Court held another sealed hearing, at which it listened to Mr. Williams, once again, for over an hour. Mr. Williams "talk[ed] in circles," "contradict[ed]" himself, and, as he had done at the previous hearing, "ke[pt] demanding things from Mr. McAfee that have absolutely nothing to do with [his] criminal cases." [Second Hr'g Tr. at 157:17–18, 163:4–6, 176:1 (on file with the Court)]. He also levied "unfounded complaints" against Mr. McAfee, [*id.* at 176:4–5], insisting that Mr. McAfee "just doesn't have [his] best interest in mind," is "embarrassed to represent [him]," and has made "intentional efforts to . . . handicap [him]." [*Id.* at 133:1, 133:9, 140:18–19].

After listening to Mr. Williams, the Court found that "there is absolutely no evidence in this record that Mr. McAfee has taken any . . . action to intentionally handicap Mr. Williams's defense" and that "[t]o the extent there exists a conflict of interest here, it is one created by Mr. Williams." [*Id.* at 172:20–23, 174:18–20]. The Court concluded that Mr. Williams—who earlier in the hearing had said that he is "not a person that just lets the attorney deal with everything," [*id.* at 154:14–15]—is "not going to get along with any lawyer," and the Court, therefore, was "reluctant to put any other lawyer in th[e] position" of having to represent him. [*Id.* at 177:25, 178:1–3]. In the end, the Court determined that it "ha[d] no choice but to grant Mr. McAfee's motion to withdraw" and "ha[d] no choice but to continue the May 14 trial date." [*Id.* at 181:11–12, 182:9–10]. The Court questioned whether Mr. Williams's "goal here is to simply delay" the trial, [*id.* at 182:3], and it echoed its own and Judge Wyrick's prior warnings that he may now

4

have to represent himself, or retain private counsel, [*id.* at 173:9–13, 181:12–17; 183:9–13]. "I may or I may not" appoint substitute counsel, the Court stated before adjourning. [*Id.* at 181:11–17]. Having now carefully considered whether Mr. Williams is entitled to a substitute attorney or has waived his right to an attorney through his statements and actions, the Court will rule on whether it will make a further appointment.

## II. ANALYSIS

A criminal defendant's right to the assistance of counsel is axiomatic. *See* U.S. Const. amend. VI; *see also Faretta v. California*, 422 U.S. 806, 807 (1975) ("The Sixth and Fourteenth Amendments of our Constitution guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment."). The right to counsel, however, "is not absolute," and "a court must beware that a demand for counsel may be utilized as a way to delay proceedings or trifle with the court." *United States v. Green*, 388 F.3d 918, 921 (6th Cir. 2004) (quoting *United States v. Krzyske*, 836 F.2d 1013, 1017 (6th Cir. 1988)). "[A] 'persistent, unreasonable demand for dismissal of counsel and appointment of new counsel . . . is the functional equivalent of a valid waiver of counsel.'" *Id.* at 921–22 (quotation omitted); *see United States v. Coles*, 695 F.3d 559, 562 (6th Cir. 2012) ("[A] defendant may engage in conduct which constitutes a waiver of his right to counsel." (citations omitted)). A defendant's demand for a new attorney may be unreasonable if he is "completely unwilling to accept the consistent advice of . . . experienced criminal defense attorneys appointed to represent him." *United States v. Henderson*, No. 98-5216, 1999 WL 313842, at *2 (6th Cir. May 3, 1999).

Mr. Williams's demand for Mr. McAfee's dismissal is unquestionably unreasonable because the record shows not only that he resisted Mr. McAfee's legal advice at nearly every

5

turn but also that he deliberately manufactured a conflict of interest with him. Again, after the Court's careful and considerable efforts to probe Mr. Williams's reasons for his dissatisfaction with Mr. McAfee, the Court made several ineluctable findings: that Mr. Williams nagged Mr. McAfee to devote his time, energy, and resources to a matter that is peripheral or immaterial to his defense,[2] that his complaints against Mr. McAfee were "unfounded," that "[t]o the extent there exists a conflict of interest here, it is one created by Mr. Williams," and that Mr. Williams is "not going to get along with any lawyer." [Second Hr'g Tr. at 162:19–25, 163:1, 174:18–20, 176:4–5, 177:25, 178:1–3]. In fact, the Court was so convinced of its findings that at one point it directly asked Mr. Williams, "[D]o you hear talk around the detention center that one way to create a conflict with your attorney and get that attorney replaced is to file a BPR complaint?" [*Id.* at 166:5–8]. Although Mr. Williams never expressly demanded the appointment of a new attorney, the predicament that he created for Mr. McAfee is all but tantamount to a demand for one because:

> Mr. McAfee will now be required by the Board of Professional Responsibility to respond to [Mr. Williams's] complaint, whenever it's provided to him. It will take time away from his efforts to prepare for the trial of this case, and it's a serious matter. If he doesn't comply with the request for an answer by the Tennessee Supreme Court, they will summarily suspend his license.

[*Id.* at 175:1–11].

The issue of sabotage aside, Mr. Williams has also demonstrated an inveterate and unreasonable proclivity for trying to wrestle matters of legal strategy away from Mr. McAfee:

> Mr. Williams: "I'm not a person that just lets the attorney deal with everything."

---

[2] To safeguard the attorney-client privilege and any possible defenses that Mr. Williams may raise at trial, no matter how irrelevant they might be, the Court will not divulge this matter in this opinion.

6

> The Court: "What do you need an attorney for if you're that kind of person who won't listen to an attorney's advice and let the attorney make strategy? Why do you need an attorney if you want to be fully in charge?"
>
> Mr. Williams: "No, I don't want to be in charge. I just want to be informed."
>
> The Court: "It sure sounds to me like you want to be in charge. You . . . want to do all these things that Mr. McAfee may feel like they're totally unnecessary."

[*Id.* at 154:14–21, 155:1–2]. At the center of the strategic tug-of-war between Mr. Williams and Mr. McAfee is the aforementioned—and unspecified—matter that is irrelevant to Mr. Williams's defense. At the second-to-last hearing, the Court took care to inform Mr. Williams that this matter was irrelevant to his defense, and at the last hearing, the Court again informed him that it has "absolutely nothing to do with [his] two criminal cases." [*Id.* at 163:5–6].

Mr. Williams's maneuvers to hijack control over matters of legal strategy—provoking Mr. McAfee's withdrawal along the way—are another reason why his demand for a substitute attorney is unreasonable. *See United States v. Ammons*, 419 F. App'x 550, 553 (6th Cir. 2011) ("A defendant is not entitled to new counsel and the delay that comes with it every time he disagrees with counsel's strategic judgment."); *see generally Florida v. Nixon*, 543 U.S. 175, 187 (2004) ("An attorney undoubtedly has a duty to *consult* with the client regarding 'important decisions,' including questions of overarching defense strategy. That obligation, however, does not require counsel to obtain the defendant's *consent* to 'every tactical decision.'" (emphasis added) (citation and quotation omitted))); *Taylor v. Illinois*, 484 U.S. 400, 418 (1988) ("The adversary process could not function effectively if every tactical decision required client approval.").

The question, though, of whether Mr. Williams's quest for a substitute attorney qualifies as persistent, in addition to unreasonable, is less clear-cut as the record stands. *See Green*, 388 F.3d at 921 ("[A] '*persistent*, unreasonable demand for dismissal of counsel and appointment of

7

new counsel . . . is the functional equivalent of a valid waiver of counsel.'" (emphasis added) (quotation omitted))). Mr. Williams never moved to dismiss his first two attorneys, Mr. Leonard and Mr. McKenzie, or expressed dissatisfaction with them, and in fact, at the last hearing, Mr. Williams said that he "[didn't] know that happened with [Mr. McKenzie]," "[didn't] know why [he] quit," and "thought he was great." [Second Hr'g Tr. at 178:8–9, 178:18–19]. His statements prompted the Court to review the sealed record of Judge Wyrick's hearings on Mr. Leonard's and Mr. McKenzie's motions to withdraw, but in its review, it could find no mention of the specific problems that beset Mr. Williams's relationships with either attorney.

While the Court—having now presided over two lengthy, in-person hearings with Mr. Williams—could comfortably infer that the problems that plagued his relationship with Mr. McAfee also plagued his relationship with Mr. Leonard and Mr. McKenzie, *see* [*id.* at 175:14–16, 182:8–9 (reprimanding Mr. Williams for "talk[ing] when [he] should be listening" and commenting that Mr. Williams "wants to oversee every conversation" and "every effort that's made to prepare for the trial")], inferences are not the currency of the realm when the Court deals in matters under the Sixth Amendment, *see United States v. Johnson*, 24 F.4th 590, 603 (6th Cir. 2022) (declaring that the basis for a defendant's waiver of the right to counsel by his conduct must be "explicit" (citations omitted)). In addition, Mr. Williams—both at the second-to-last hearing and the last hearing—has insisted, repeatedly, that he wants the assistance of an attorney and does not want to represent himself. *See* [Second Hr'g Tr. at 178:7–8 (containing Mr. Williams's statement that, prior to Mr. McAfee, "[he] never discharged a lawyer or wanted to"); *id.* at 154:22 (containing Mr. Williams's statement that "[he does not] want to be in charge")]. In sum, the record shows only that Mr. Williams's persistent, and obstreperous,

8

demands for a substitute attorney—unreasonable though they were—were a reaction to his relationship with just one attorney, Mr. McAfee, and not his other two attorneys.

Because Mr. Williams maintains that he does not wish to proceed pro se and the record lacks verifiable evidence of *persistent*, unreasonable demands for the dismissal of all three of his attorneys—and because his Sixth-Amendment right to counsel is a solemn one—the Court is loath to rule that it can make an explicit finding, on this record, that he has waived his right to representation. *See Johnson*, 24 F.4th at 603 (reversing the district court's decision that the defendant had waived his right to counsel, despite the fact that his three prior attorneys had withdrawn, because the defendant had remained "amenable to counsel's representation" and the record lacked an explicit basis for the district court's conclusion that the defendant had waived his right to counsel). But again, the Court "must beware that a demand for counsel may be utilized as a way to delay proceedings or trifle with the court," *Green*, 388 F.3d at 921 (quotation omitted), and as the Court made clear to Mr. Williams at the last hearing, "[i]f [his] goal here is to simply delay, it's not going to work," [Second Hr'g Tr. at 182:3–4].

While Mr. Williams's right to counsel is indeed worthy of deference and preservation, it is, again, "not absolute," *Green*, 388 F.3d at 921 (quotation omitted), and the interests of the alleged minor victims and their families in seeing him answer to a jury of his peers is just as weighty, *see United States v. Coles*, 695 F.3d 559, 562 (6th Cir. 2012) ("[A] defendant's right to assistance of counsel 'does not imply the absolute right to counsel of one's choice . . . [but] must be balanced against the need for the efficient and effective administration of criminal justice.'" (quotation omitted)); *United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001) (directing district courts, when ruling on motions to withdraw or substitute counsel, to consider "the public's interest in the prompt and efficient administration of justice" (citations omitted));

9

*see also* 18 U.S.C. § 3161(h)(7)(A) (referring to "the best interest of the public . . . in a speedy trial"). And the public's interest is weightier still when the Court considers that the trial date, which was originally scheduled for September 2023, has now been continued four times: to November 2023, then to February 2024, then again to March 2024, and then once more to May 2024. *See Green*, 388 F.3d at 922 (stating that the right to counsel "must be balanced against the court's authority to control its own docket" and considering delays in the trial date as a factor in ruling that the defendant had waived his right to counsel by demanding multiple attorneys' dismissal).

So, the Court issues a fourth and ***final*** warning to Mr. Williams, in unmistakable terms: if he cannot work harmoniously with his next attorney and *either* he *or* his substitute attorney inform the Court of a desire or need to dissolve their attorney-client relationship, Mr. Williams will have waived his constitutional right to an attorney and will represent himself from then on, including at trial. Simply, "[a]t some point, when competent experienced counsel are informing the Court of their inability to continue to represent a defendant, one begins to suspect that the defendant is either irrationally hard to satisfy or, as an alternative, perhaps malingering or attempting to delay the trial." *Coles*, 695 F.3d at 561 (quotation omitted). Mr. Williams is but one attorney away from that point, and the Court's fourth and final warning to him—here in writing—now creates a record that will make any future finding of waiver explicit, whether he wants to proceed pro se or not. *See Johnson*, 24 F.4th at 603 (stating that "[i]n cases where we have affirmed a district court's determination that a defendant waived his right to counsel by conduct, the district court has made the basis for the waiver explicit" and recognizing that it affirmed a district court's finding of waiver when "the district court had previously warned the

10

defendant that this was his last appointed attorney and that if he sought another attorney, then he would proceed *pro se*").

The Court also warns Mr. Williams that it will grant no additional continuances of the trial date—which is now eight months removed from its original date—beyond the continuance it is now about to grant. If Mr. Williams or his new attorney complains that their relationship has suffered an irreparable breakdown, the Court will not continue the trial, and Mr. Williams will represent himself at trial, irrespective of whether those complaints come to the Court's attention in the weeks before, days before, or even on the very morning of trial. The trial will commence as scheduled, with Mr. Williams defending himself, and any lamentations about his lack of preparedness—including any failure to issue subpoenas to witnesses—or his lack of qualifications to represent himself will not justify a continuance. Because the Court has warned him—well in advance of the new trial date—that it will not countenance a motion to continue the trial, even if he is acting in a pro-se capacity, he will endure no prejudice to his defense. *See United States v. Parker*, 403 F. App'x 24, 26 (6th Cir. 2010) (declaring that a district court's denial of a motion for a continuance of a criminal trial constitutes a due-process violation only when it "result[s] in actual prejudice to the defendant's defense"). In short, Mr. Williams must be ready for trial on the newly set date, whether by way of his new attorney's representation or his own.

Finally, the Court would be remiss if it did not warn Mr. Williams of the dangers of self-representation. He has never studied law and is not an attorney, has no real familiarity with the Federal Rules of Evidence or the Federal Rules of Criminal Procedure, is unacquainted with matters of trial strategy, and does not seem to have any understanding of the difference between relevant and irrelevant evidence. If he is unable to coexist with his new attorney and, as a

consequence, must represent himself at trial, his lack of experience with the law may prove particularly problematic, if not disastrous, to his defense against the child-exploitation charges under § 2251(a) and (e) because prosecution of these types of charges often involves reams of digital forensic evidence and expert-witness testimony. Mr. Williams must understand that if he represents himself, he will be on his own. The Court cannot and will not tell him or even advise him how to try his case. It cannot and will not instruct him on the meaning or applicability of the Rules of Evidence or the Rules of Criminal Procedure, which he must abide by at all times. It cannot and will not relax those rules for his benefit.

In sum, a trained attorney would defend Mr. Williams far better than he could defend himself. Mr. Williams would act unwisely—in fact, he would act to his own detriment—if he does not make every conceivable effort to work together with his new attorney, so as to ensure that he has legal representation at trial. The Court strongly urges him not to engage in conduct—for example, the micromanagement of his own defense, particularly as it pertains to matters of legal strategy—that might compromise the attorney-client relationship between him and his new attorney, because it *will* result in his waiver of his constitutional right to an attorney if a breakdown of that relationship ensues. In short, the Court strongly urges Mr. Williams not to represent himself.

### III. CONCLUSION

The harm that Mr. Williams, through his actions and unreasonable demands for a new attorney, has caused to his attorney-client relationship with Mr. McAfee leaves the Court with no alternative but to grant Mr. McAfee's motion to withdraw and continue the trial. The Court, however, cannot conclude, based on the record before it, that Mr. Williams has waived his right to counsel. The Court, therefore, **ORDERS** as follows:

1. Mr. McAfee's Motion to Withdraw as Attorney [Doc. 46, 2:23-CR-00027-1-JRG-CRW; Doc. 98, 2:21-CR-00027-1-JRG-CRW] is **GRANTED**, and Mr. McAfee is **RELIEVED** from further representation of Mr. Williams;

2. Mr. Williams's oral request for substitute counsel is **GRANTED**;

3. Ilya I. Berenshteyn, Esq., a member in good standing of the CJA panel, is hereby **APPOINTED** to represent Mr. Williams.

4. The trial date is hereby **RESET** for Tuesday, July 16, 2024, at 11:00 a.m. This newly scheduled trial date falls within the Speedy Trial Act's deadline and therefore does not constitute a delay for case-specific needs under the Speedy Trial Act. 18 U.S.C. § 3161 *et seq*. The motions deadline, which previously expired, is not extended. Any requests for special jury instructions are due five days before the trial date; and

5. The Clerk of Court is **DIRECTED** to mail a copy of this memorandum opinion and order to the address on file for Mr. Williams.

So ordered.

ENTER:

s/J. RONNIE GREER<br>
UNITED STATES DISTRICT JUDGE